Small v. Pittsburg Railways Company, Appellant.

*Negligence—Street railways—Runaway car—Evidence.*

In an action against a street railway company to recover damages for personal injuries resulting to the plaintiff from being struck by a piece of wood which was torn from a telephone pole by the impact of a runaway electric car with the pole, the evidence showed that plaintiff was standing on a railroad station platform near the pole in question. The railway tracks ran down a public street at a grade of six per cent for a considerable distance, and terminated immediately opposite the station. The car in question was in good condition, properly equipped with brakes and was provided with sand; but the tracks were so incased in ice, that when the motorman attempted to apply the sand, the wheels did not take hold even when reversed. In consequence the car slid down the grade. There was

no evidence that the motorman was not a prudent man, and it was shown affirmatively that he was of long experience in running electric cars. The motorman had no difficulty when he started on the grade, and it was not until he was a considerable distance down the grade that he began to lose control. He testified that he thought that he would have no difficulty in taking the car down the whole distance. The testimony showed that the ·weather at the time was of extraordinary character, and that owing to the ice on the rails the sand could not cling to the rail. *Held*, that there was no evidence of defendant's negligence to submit to the jury.

Negligence is not to be presumed upon the happening of an occurrence which is the result of exceptional and extraordinary conditions.

Argued Oct. 30, 1906. Appeal, No. 42, Oct. T., 1906, by defendant, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1902, No. 1,014, on verdict for plaintiff in case of Frank E. Small v. Pittsburg Railways Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries. Before BROWN, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $6,900. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*James C. Gray*, with him *Clarence Burleigh* and *William A. Challener*, for appellant.

*John C. Haymaker*, with him *Thomas E. Finley*, for appellee.

OPINION BY MR. JUSTICE POTTER, January 7, 1907 :

This was an action of trespass brought by Frank E. Small against the Pittsburg Railways Company, to recover damages for an injury alleged to have been sustained by reason of the negligence of the defendant. From East McKeesport to Wilmerding the street railway of the defendant company runs on the public street for a distance of a mile and a quarter, upon a grade of six per cent. At the foot of the slope is the Wil-

merding station of the Pennsylvania Railroad.    The tracks of the street railway terminate at that point, directly across the street from the station.

On the evening of January 29, 1902, shortly before eight o'clock, the plaintiff, who was standing on the station platform, was struck by a piece of wood broken from a nearby telephone pole.    A car of defendant company had gotten beyond control while coming down the Wilmerding hill, and had left the track at the terminus, crossed the street, and collided with the telephone pole, breaking it and running against the wall of the railroad station.    A fragment of the broken pole was thrown against plaintiff, and inflicted serious injuries.

The testimony shows that the car escaped from control while coming down the hill, by reason of the slippery condition of the tracks upon the grade.    Rain had fallen, which froze to the rails as it fell.    The car was in good condition, and properly equipped with brakes, and was provided with sand; but the tracks were so incased in ice, that when the motorman attempted to apply the sand, the wheels would not take hold, even when reversed.    In consequence, the car slid down the grade.

Upon the trial, as the court said, there was no evidence of improper brakes, machinery or appliances.    The only matter which the court submitted to the jury was the conduct of the employees in charge of the car, in attempting to take it down the hill when the tracks were icy.    He instructed the jury that, if prudent employees would have considered it dangerous to take the car down at that time, and would not have taken the hazard, then the employees in charge of the car were guilty of negligence, and the plaintiff was entitled to recover.    But the difficulty in sustaining this submission of the question, is that there is no evidence that the employees were not prudent men, of long experience, and yet they did as a matter of fact conclude that it was reasonably safe, under the circumstances, to attempt to take the car down.

It will be remembered that the plaintiff was not a passenger on the car, but was standing upon the public highway near the terminus of the tracks.    The car which ran into the telephone pole and broke it, thus inflicting injury upon the plain-

tiff, was the second of the two cars which, by reason of the ice on the rails, escaped from control at the point in question. The motorman of the second car, which is the one which caused the injury to the plaintiff, had no knowledge of the fact that the car immediately preceding had gotten beyond control, and he started down the hill a few minutes afterwards. He had no difficulty until his car had proceeded a considerable distance, when he found it was beyond control. He used every effort to stop the car, but was unable to do so. He tells the story thus in his own words : " I started off so slow that any six years old boy could get on that car, from the top of the hill until I got within about two hundred feet of the bridge that goes under the track. Then I began to notice that the brakes would not hold it any more; it began sliding. Then I threw off the brake and reversed the car, and pulled the sand, and I found there was too much ice on the rail for the wheel to take hold on the sand. It just brushed the sand off when it was revolving in the backward motion. I kept it on reverse all of the way, and when I got to the stone quarry the trolley jumped off. Then I was in darkness from there down to the foot of the hill and kept using all force from there on down to the foot of the hill, expecting every minute I would get control of it again, but I didn't until I ran into the station." Fryan, the motorman, had many years' experience, and had been engaged two years and a half on that particular line. He had brought his car up the hill over the same track only a little while before, without trouble or difficulty ; and, after proceeding a short distance along the road, he changed cars and started back again towards the foot of Wilmerding hill.

The evidence shows that, before entering upon the down grade, he tested his brakes, found they were in good condition, and tested his sand, and found that the supply was good, and that it was running freely. There is no suggestion in the evidence that anything was wrong with the car, or that the motorman did anything which he ought not to have done, or left anything undone which he should have done, in the management of his car. The sole fault which can be imputed to him, under the evidence, is that he erred in his judgment when he started his car down the grade. As the sequence showed,

he did underestimate the difficulty caused by the presence of ice on the rails. The motorman of the car immediately ahead of him made the same mistake. But the exercise of judgment —even though it be mistaken judgment—is not negligence. Under ordinary conditions of the weather, and so far as his experience showed, under extraordinary conditions, he would have been safe in taking his car down that hill. He had done it many times before, and his experience certainly fitted him to judge as to the conditions. He occupied the place of greatest danger on the front platform, and regard for his own safety would naturally quicken his instinct to anticipate danger, if, in his judgment, there had been any real occasion for it.

The testimony is clear, that the accident was caused by conditions most unusual. When asked if he had ever experienced, during the two and a half years that he had been running over that road, such a night as that of the accident, the motorman replied: " No, I told you I never experienced it in twenty-two years before." The testimony of the defendant's superintendent also was that the night was bad, raining, sleeting, icy ; the worst night he had ever seen in all his experience in street railroading.

Negligence is not to be presumed upon the happening of an occurrence which is the result of exceptional and extraordinary conditions. It must be presumed that in a hilly country, such as that in the region of Pittsburg, some risks must be taken in the operation of street cars. It will not do to stop them at every change in the weather. The public need for them is greatest in bad weather. The knowledge and experience of the motorman did not suggest to him any undue risk of accident, and we cannot say, or permit a jury to conjecture, that because an accident did happen in this case, it affords good ground for charging the motorman with negligence, because he did not foresee that the car would get beyond control, and did not refuse to start it down the hill. The theory upon which this action was brought, as shown by the statement, was not that the motorman erred in his judgment. There is no such claim made. The plaintiff charged only that the car was improperly operated, and that the employees were incompetent and careless, and that, owing to the careless manage-

ment of the car, and by reason of deficient machinery and lack of proper brakes, the car became unmanageable. None of these charges were supported by evidence. There was no testimony whatever to show that the motorman was incompetent, or that he was remiss in any way in the operation of the car, or that the brakes or machinery were deficient. The only thing which, in the opinion of the trial judge, could be submitted to the jury was, whether the judgment exercised by the motorman in deciding to run his car down the hill, was bad. But no witness was produced who testified that the situation at the brow of the hill, as it appeared before the accident, was such as to deter a prudent motorman from attempting to take his car down. The finding of the jury in this respect could not have been based on evidence, but only on conjecture. At most, it would be their judgment after the accident as against that of an experienced motorman, upon the circumstances as they existed before the accident, and in a situation, too, where his own safety was at stake in the course to be pursued. Hindsight is better than foresight, no doubt, and it is easy to criticise after the event; but the law holds men responsible only for such consequences as can, in the exercise of reasonable prudence, be foreseen.

We feel that the facts of this case negative any inference of negligence arising out of the mere attempt upon the part of the motorman to operate the car, proceeding as he did, slowly and cautiously, feeling his way, as it were, until unfortunately he found by trial that the conditions were so unusual, that, contrary to his expectation, based upon long experience, the sand would not enable him to control his car.

We are unable to find in this record, any evidence of negligence upon the part of the defendant company, sufficient to justify the submission of the case to the jury. This plaintiff was not upon the car, and was not therefore entitled to the benefit of the presumption which arises in case of injury to a passenger.

The assignments of error are sustained, and the judgment is reversed.